THE STATE OF KANSAS v. WILLIAM H. COLGATE.

ARSON; *Former Acquittal— Good Defense.* Where a grist mill and all its contents, including the books of account of the owners of the mill, are destroyed by one single fire, and the defendant is prosecuted criminally for setting fire to and burning the mill, and on such charge is acquitted, *held*, that such acquittal is a good defense to a subsequent prosecution for setting fire to and burning the books of account.

*Appeal from Cowley District Court.*

AT the May Term, 1883, *William H. Colgate* was found guilty of arson in the fourth degree, and sentenced to be imprisoned in the state penitentiary for three years. He appeals. The facts appear in the opinion.

*W. P. Hackney, Henry E. Asp,* and *J. F. McMullen,* for appellant.

*W. A. Johnston,* attorney general, *F. S. Jennings,* county attorney, *M. G. Troup,* and *Edwin A. Austin,* for The State.

The opinion of the court was delivered by

VALENTINE, J.: The defendant was convicted and sentenced for arson in the fourth degree; and the principal ground now urged for a reversal of the judgment of the trial court is, that such court erred in sustaining a demurrer to the defendant's plea of a former acquittal. It appears that on August 13, 1882, at about one o'clock in the morning, the grist mill of Bliss & Wood, with all its contents, including

the books of account of the owners of the mill, was destroyed by fire. Some time afterward, the defendant was prosecuted criminally for setting fire to and burning the mill; and on this charge he was tried and acquitted. About five months afterward a new prosecution was instituted against him, for setting fire to and burning the books of account. To this charge he filed a plea of former acquittal, which plea was held insufficient on demurrer, on the ground that the acquittal in the first prosecution was no bar to the second prosecution. In the first prosecution it was charged that the defendant, William H. Colgate, "did unlawfully, willfully, maliciously and feloniously set fire to and burn, in the night-time, a certain grist mill, situated in Cowley county, state of Kansas, and belonging to C. A. Bliss and B. F. Wood, partners under the firm-name and style of Bliss & Wood;" and in the second prosecution it was charged that the defendant—

"Willfully, maliciously, unlawfully and feloniously did set fire to and burn in the night-time, of the goods, wares, merchandise and chattels of C. A. Bliss and B. F. Wood, partners, doing business under the firm-name and style of Bliss & Wood, one ledger, one journal, one cash-book, one weigh-book, one grain and shipping book, and one petty account book, the said books then and there being the books of account representing and setting forth the business then and for a long time prior thereto transacted and done by the said firm of Bliss & Wood in their business as private millers and shippers of grain, flour, and mill-stuffs."

The defendant, in his plea of a former acquittal, set forth and alleged that the grist mill and all its contents, including the said books of account, were destroyed at the same time, on the same night, by the same fire, and that the burning of the mill and the burning of the books of account were simply parts and portions of one single and entire transaction. And he further alleged that the prosecution in its attempt to prove the defendant's guilt on the first charge, simply introduced evidence tending to prove that the defendant had admitted that he set fire to the books of account which were then in the mill, and that the fire spread and not only con-

sumed the books, but also consumed the mill, with all its contents, including the books, machinery, grain, flour and all things else in the mill; and the prosecution did not attempt to prove the defendant's guilt in any other manner. And upon this evidence the court instructed the jury as follows:

"It is not necessary, however, in every case, that the accused should have entertained a specific intent to burn the building, for the burning of which he is charged with arson. For instance: if a book-keeper is employed by a firm which is engaged in operating a grist mill, for the purpose of destroying the books of account kept by him for his employers should willfully set fire to and burn such books of account in the mill, under such circumstances as that the firing and burning of such books would probably result in the burning of the mill, and such result should follow, he would be guilty of arson in so burning the mill."

"There have been a number of witnesses in this case who have testified to hearing the defendant admit that he set fire to certain books in the mill alleged in the information to have been burned, each witness giving his recollection as to what the defendant said in that regard, and as to the circumstances and manner in which he said the books were set on fire."

As the defendant's plea of a former acquittal was heard and decided upon a demurrer, all the facts alleged therein must, for the purpose of considering the ruling on the demurrer, be considered as true; and, considering these facts in that manner, did the court below err in sustaining the demurrer?

Now it must be admitted that the offenses set forth in the two informations do not appear from the informations themselves to be one and the same offense, or to be parts and portions of one and the same offense; and one does not appear to be included in the other; and the facts set forth in one information would not of themselves prove the offense charged in the other. The offense charged in the first information was the setting fire to and burning a grist mill, which is arson in the third degree; while the offense charged in the second information was the setting fire to and burning books of account, which is arson in the fourth degree. But it is clear beyond all doubt, as appears from the real facts of the

33—31 KAS.

case as set forth in the defendant's plea of a former acquittal, that the principal facts constituting the two alleged offenses are identically the same; and that one of such offenses could not be proved without proving the principal facts constituting the other of such offenses. Indeed, the offense charged in the first information could not be proved without proving all the facts constituting the offense charged in the second information. If the defendant was guilty under either information, he must have been 'guilty under both; and if he was innocent as to either of the offenses charged, he must have been innocent as to both. He could not possibly be guilty of one, and innocent of the other. This is all upon the assumption that the facts set forth in the defendant's plea of a former acquittal are true. It is not claimed that the defendant committed more than one wrongful act, and that wrongful act was the setting fire to the books of account in the prosecuting witness's mill; and all that afterward occurred were the mere consequences of that one wrongful act.

Under the statutes of Kansas, the offense of arson is divided into four degrees. The generic offense seems to be the willful setting fire to or burning property to the injury of another. This offense may, in some one or more of its different degrees, be committed at any time, and with respect to any tangible combustible property, except perhaps some kinds of real estate; and the offense may be aggravated, mitigated or modified by many circumstances, so as to place it in one or another of several of the four different degrees. And when the information or indictment charges the defendant with committing one of the higher degrees, he may be found guilty of that degree, or of any inferior degree, or of any offense included therein, or of an attempt to commit the offense. (Crim. Code, §§ 121, 122.) Of course, however, the defendant can be found guilty of the offense, or of any degree thereof, or of an attempt to commit the same, only where the facts of such offense, or the degree of which he is found guilty, are properly set forth or alleged in the information or indictment. Also, under the statutes of Kansas,

if the defendant in a criminal action be convicted or acquitted, he cannot again be prosecuted for the same offense, or for any lower degree thereof, or for any offense necessarily included therein, or for any attempt to commit such offense. (Crim. Code, § 233; Act Regulating Crimes and Punishments, §§ 296–298.)

And upon general principles a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such separate parts, although each part may of itself constitute a separate offense. If the offender be prosecuted for one part, that ends the prosecution for that offense, provided, such part of itself constitutes an offense for which a conviction can be had. And generally we would think that the commission of a single wrongful act can furnish the subject-matter or the foundation of only one criminal prosecution. Thus in Iowa, it has been held that, where a person uttered at a bank several forged checks at one time and by the same act, he committed but one offense, and that a conviction for uttering one of the checks was a bar to a conviction upon the others. (*The State v. Egglesht*, 41 Iowa, 574; same case, 20 Am. Rep. 612.)

In Connecticut, it has been held that where a person has in his possession at the same time several forged bank notes of different banks, with the intent to pass them, and thereby defraud the person who might take them, and also to defraud the several banks, such facts constitute only one offense, and a conviction founded upon the possession of any part of such bank notes will bar a prosecution founded upon the possession of any other part of the same. (*The State v. Benham*, 7 Conn. 414.)

In New York, it has been held that where a defendant has been acquitted of the offense of forging and counterfeiting certain indorsements on a promissory note, he cannot be again tried for uttering and publishing as true such indorsements. (*The People v. Allen*, 1 Parker's Crim. Rep. 445.)

In Vermont, it has been held that where a person by one blow wounds two men, a conviction for the assault and bat-

tery charged to have been committed on one of them is a bar to an indictment for the assault and battery as committed on the other. (*The State v. Damon*, 2 Tyler, 387.)

In Indiana and Alabama, it has been held that where a person kills two other persons by the same act, he has committed only one crime, and if convicted for the homicide of one of them, he cannot afterward be tried for the homicide of the other. (*Clem v. The State*, 42 Ind. 420; same case, 13 Am. Rep. 369; *Ben v. The State*, 22 Ala. 9.)

Upon the same subject, and substantially to the same effect, see *Womack v. The State*, 7 Coldwell, 509.

In Ohio, it has been held that where several articles of property are stolen at the same time, the transaction being the same, the larceny of the whole of the articles, although they belong to different owners, may be embraced in one count of the indictment, and the taking thereof charged as one offense. (*The State v. Hennessy*, 23 Ohio St. 339; same case, 13 Am. Rep. 253.)

In Texas, it has been held that the stealing at the same time and place of several articles belonging to different persons is but one offense, and a conviction for the larceny of one of such articles is a bar to an indictment for the larceny of another. (*Wilson v. The State*, 45 Tex. 76; same case, 23 Am. Rep. 602.) To the same effect, see *Hudson v. The State*, 9 Tex. Ct. App. 151; same case, 35 Am. Rep. 732; *Rex v. Jones*, 4 Car. & P. 217; *Jackson v. The State*, 14 Ind. 327; *Lorton v. The State*, 7 Mo. 55; *The State v. Williams*, 10 Humph. 101; *Fisher v. The Commonwealth*, 1 Bush, 211; *The People v. McGowan*, 17 Wend. 386.

In Kentucky, it has been held that although the setting up of a gaming table is one offense, and the keeping of a gaming table and inducing others to bet thereon is another offense, yet that when they are both committed by one person and at the same time, they are but one offense, and may be set forth in one count, and will authorize but one punishment. (*Hinkle v. The Commonwealth*, 4 Dana, 518.)

In Tennessee, it has been held that a conviction for run-

ning a horse race is a good defense to a prosecution for betting on the same race. (*Fiddler v. The State*, 7 Humph. 508.)

In Georgia, it has been held that a conviction for burglary will bar a prosecution for robbery, where the two prosecutions were admitted to be founded upon the same transaction, and the court laid down the broad doctrine that one prosecution will bar another "whenever the proof shows the second case to be the same transaction with the first." (*Roberts v. The State*, 14 Ga. 8.) And in the same state it was held that a conviction for burglary will "bar a prosecution for robbery, if the circumstances of the robbery were put in proof in order to make out the case for which the prisoner was tried and convicted on the first indictment, because in such case the robbery constituted *a part* of the same transaction for which the prisoner was first tried." (*Copenhaven v. The State*, 15 Ga. 264.)

In North Carolina, it has been held that a conviction for larceny, upon an indictment for burglary and larceny, will bar another prosecution for robbery where the robbery and the larceny were for the felonious taking of the same goods. (*The State v. Lewis*, 2 Hawks, 98.)

In New York, it has been held that an indictment, charging as a single act the burning of a number of designated dwelling houses, charges but one offense. (*Woodford v. The People*, 62 N. Y. 117; same case, 20 Am. Rep. 464.) Substantially to the same effect, see *Commonwealth v. Squire*, 42 Mass. (1 Metc.) 258.

In New Jersey, it has been held that where a person has been convicted of arson, he cannot afterward be tried on an indictment for the murder of a person whose death was alleged to have been caused by the arson. (*The State v. Cooper*, 1 Green, N. J. Law, 461; same case, 25 Am. Dec. 490.)

In almost every public offense, if not in every one, several separate and distinct facts may enter in to constitute the offense. These facts may exist contemporaneously with the wrongful act or acts of the offender, or they may take place subsequently, and often in succession, as succeeding consequences of the wrongful act or acts. Where a person com-

mits a single larceny by stealing several articles, the facts are all contemporaneous; but where a person commits an act that results in murder, the murder may not be completed, or indeed may not exist, for days or months or even a year afterward, when the injured person dies. This is also true to some extent with regard to arson: the fire may be set to one article, and may then spread from article to article, not reaching all the articles for many hours afterward; and yet the defendant may be guilty, and generally is guilty, for the burning of every article which is burned in consequence of the fire which he at first wrongfully kindles. In other words, a person who commits arson as to one thing, is generally guilty of arson as to every other thing which takes fire and burns as the natural and probable consequence of the defendant's wrongful act. (1 Bishop's Crim. Law, § 329, and cases there cited; see also the following cases, not cited by Bishop: *Rex v. Cooper*, 5 Car. & P. 535; *The Commonwealth v. Wade*, 34 Mass. 395; *Hennessey v. The People*, 21 How. Pr. 239.)

In the first of these three cases, the defendant set fire to a stack, and burned the barn; in the second, he set fire to a barn, and burned a dwelling house; and in the third, he set fire to his own store to defraud an insurance company, and burned a dwelling house.

As before stated, arson in this state may be committed with respect to every kind of personal property which may be burned. (Comp. Laws of 1879, ch. 31, § 59.) And it may be committed with respect to almost every kind of combustible real estate. Hence, if the defendant did in fact set fire to the books of account and burn the same, he was guilty of arson, not only with respect to the books of account, but also with respect to the mill, and all the machinery, flour, tables, chairs, desks, safe and all the other innumerable articles contained in the mill and consumed by that burning; and if he may be prosecuted for burning the mill, and then be prosecuted for burning the books of account, he may be prosecuted by separate prosecutions for each of the innumerable articles that were destroyed by that one single fire, a fire that was caused

by one single wrongful act.   And if two prosecutions may be founded upon one single wrongful act, the act of setting fire to the books of account, why may not a hundred or a thousand? The proper limit for separate prosecutions in such cases would seem to be either the number of articles burned, or the number of criminal acts committed.   It is difficult to think of any other limitations.

Mr. Bishop, in his work on Criminal Law, in speaking of that provision of the various constitutions which says that no person shall be twice put in jeopardy for the same offense, says that, "to give our constitutional provision the force evidently meant, and to render it effectual, 'the same offense' must be interpreted as equivalent to the same criminal act." (1 Bishop Cr. Law, § 1060.)   If this be true, then only one criminal prosecution can be founded upon one criminal act. Of course, the prosecutor may associate the criminal act with all its consequences, and then carve therefrom the highest crime that can be carved from such act and its consequences, and then prosecute the wrong-doer for such crime. If he chooses, however, he may carve out a smaller degree of crime, and prosecute for that only.   But he should be allowed to carve but once.   In the present case, the prosecutor probably might have stated the wrongful act of the defendant in setting fire to the books of account, together with all the consequences of such wrongful act, in one information and in a single count, and might then have convicted the defendant of as much of the same as he could have satisfactorily proved to the jury.   Thus the prosecutor might have alleged in his information, in one single count, that the defendant willfully set fire to the books with the intent to burn the same, and also to burn the mill, machinery, tables, chairs, flour, wheat, etc., designating each article separately, and that the whole were burned in consequence of the defendant's wrongful act, and then convicted the defendant of whatever might have been proved.   The offense of setting fire to and burning the books, as well as the offense of setting fire to and

burning the mill, would have been included in the aggregated offense of setting fire to and burning the mill with all its contents. But we do not think that the prosecutor should be allowed to multiply prosecutions indefinitely by dividing up the consequences of a single wrongful act and founding a separate prosecution upon each of such consequences.

Authorities may be found in opposition to these views; hence we do not desire to state them as universal rules, but only as general rules, with probably some exceptions. Just what the exceptions are, however, we cannot now state; nor is it necessary. We shall leave that to be settled in future cases. We hardly think, however, that either the case of *The State v. Horneman,* 16 Kas. 452, or the case of *The City of Olathe v. Thomas,* 26 id. 233, furnishes any such exception. In the first case, two different kinds of offenses, with entirely different natures of intent, were clearly stated. In the second case, the defendant clearly committed *two* criminal acts, and not merely one. It must be remembered that under the real facts of this case, the proof that would have been necessary to convict the defendant of setting fire to and burning the mill would have been sufficient to convict him of setting fire to and burning the books; while the proof that would have been necessary to convict the defendant of burning the books, with the additional proof that the mill was burned by the same fire, would have been sufficient to convict the defendant of burning the mill. Therefore we would think, after a careful consideration of the case, that the prosecution and acquittal of the defendant for setting fire to and burning the mill is a good defense to the prosecution for setting fire to and burning the books; and we think the following cases, taken together, are sufficient authority for all that we have decided in this case: *Woodford v. The People,* 62 N. Y. 117; same case, 20 Am. Rep. 464; *Commonwealth v. Squire,* 42 Mass. (Metc.) 258; *Rex v. Cooper,* 5 Car. & P. 535; *Commonwealth v. Wade,* 34 Mass. (17 Pick.) 395; *Hennessey v. The People,* 21 How. Pr. 239; cases cited in 1 Bishop Cr. Law, § 329,

and notes; *The State v. Cooper*, 1 Green, N. J. Law, 361;. same case, 25 Am. Dec. 490. But also see other cases heretofore cited.

We think the court below erred in sustaining the demurrer to the defendant's plea of former acquittal, and for such error its judgment will be reversed, and the cause remanded with the order that the demurrer be overruled, and for such other and further proceedings as may be proper in the case.

All the Justices concurring.